IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

_____
                                        )
JUAN A. RIVERA,                         )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )
                                        )        Civil Action No. 08-CV-6185
ROBERT S. MUELLER, Director of the      )        Judge Pallmeyer
        Federal Bureau of Investigation,)
        Defendant.                      )
                                        )
_____)


**DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1(a)(3), Defendant Robert S. Mueller,

Director of the Federal Bureau of Investigation (the "FBI"), by and through counsel, sets forth the

following statement of material facts as to which there is no genuine issue.

1.      On August 8, 2008, Plaintiff's counsel caused a subpoena *duces tecum* to be

served on Robert D. Grant, Special Agent-in-Charge of the FBI, Chicago Division, requesting

that he appear before Judge Christopher Starck of Lake County, Illinois Circuit Court and bring

with him "[a]ll information in [his] possession contained in FBI CODIS and other data bases,

which match the DNA profile described in attached scientific report." A.R. 41[1]. Accompanying

this subpoena were a number of attachments, including reports by Dr. Edward T. Blake, of

Forensic Science Associates regarding "PCR Based DNA Analysis of Spermatozoa from the

Holly Staker Vaginal Samples." A.R. 66-116.

2.      The FBI responded to this subpoena by letter dated August 28, 2008, in which the

_____

[1] References to the "Record" or "A.R." refer to the certified Administrative Record.

Director of the FBI Laboratory declined to search for DNA profiles as Plaintiff had requested.

A.R. 1-2. The letter stated that the FBI would not honor Plaintiff's request, explaining as

follows:

> Under procedures established by the National DNA Index System (NDIS) Board, requests for searches of profiles that are not maintained in the database, also known as keyboard searches, must be submitted through the appropriate Combined DNA Index System (CODIS) State Administrator. However, even if a request such as yours was forwarded by a CODIS administrator, the FBI would still be unable to honor it. The DNA Identification Act, which established NDIS, requires that the index only include information on DNA analyses that are prepared by laboratories that are accredited and which undergo external audits that demonstrate compliance with the quality assurance standards established by the Director of the Federal Bureau of Investigation. The profile which you are requesting the FBI to search was developed by a laboratory which does not submit to external audits designed to assess compliance with these mandated quality assurance standards. Furthermore, to the best of our knowledge, the laboratory in question is not currently accredited by any accrediting agency.

A.R. 1-2. The letter went on to say: "If any sample remains for testing, we would advise that you

ensure it is analyzed by an accredited laboratory which follows the quality assurance standards.

It may then be possible for a CODIS state administrator to take ownership of the profile and

upload it into NDIS for searching." *Id.*

3.      On October 28, 2008, two months after the FBI denied Plaintiff's request that the

FBI run a Manual Keyboard Search against the DNA profile developed by Dr. Blake, Plaintiff

filed the instant Complaint For Injunctive Relief, in which he seeks judicial review of the FBI

decision set forth in the August 28, 2008 letter, and which asks the Court to "[o]rder Defendant

to promptly perform the keyboard search of the DNA profile obtained by Dr. Blake and provided

by Plaintiff in the subpoena against NDIS." Compl. at 12.

4.      The DNA profile that plaintiff requested the FBI to search against NDIS was

created by a private laboratory that is not accredited by an independent accrediting body and is run by a forensic scientist, Dr. Blake, who refuses to apply for accreditation. Compl. ¶ 24(c).

5.        The law enforcement system of indices that Plaintiff requested the FBI search, the National DNA Index System ("NDIS") is an "index to facilitate law enforcement exchange of DNA identification information," established by the Director of the FBI (the "Director") pursuant to authority delegated to him by the DNA Identification Act, 42 U.S.C. § 14132. NDIS was created, pursuant to federal statute, for the purpose of enabling federal, state, and local law enforcement laboratories to help generate law enforcement leads by identifying potential matches between crime scene DNA and DNA profiles of offenders gathered nationwide and uploaded to NDIS through the Combined DNA Index System (CODIS). Hares Decl. ¶¶ 6-9.

6.        CODIS is a software system developed for the FBI to facilitate the operation of NDIS – specifically, to enable federal, state, and local laboratories to enter and compare DNA profiles electronically within NDIS. Hares Decl. ¶ 7. CODIS operates over three hierarchical levels, NDIS being the highest level, the State DNA Indexing System (SDIS) being the mid-level, and the Local DNA Indexing System (LDIS) being the lowest level. *Id.* Data flows upward within the system: each participating state and local laboratory maintains and uploads DNA profiles into its own separate DNA index system. *Id.* Those profiles then flow upward from the local to the state, and from the state to the federal level using the CODIS software. *Id.* The CODIS software enables participating agencies to compare DNA profiles on a national level, in order to fulfill law enforcement missions such as determining whether a convicted offender may be linked to a crime or identifying missing or unidentified persons. *Id.* Only federal, state, and local criminal justice agencies may access CODIS. *Id.*

7.      Oversight and responsibility for administration of the CODIS program lies within the mission of the CODIS Unit which is part of the FBI Laboratory Division, Scientific Analysis Section, Forensic Analysis Branch.  Hares Decl. ¶ 8.  Among other duties, the CODIS Unit is charged with ensuring that CODIS and NDIS Operations comply with all applicable laws and procedures.  *Id.*

8.      The general function of NDIS is to generate leads for the law enforcement community.  Hares Decl.¶ 9.  The primary way CODIS software performs this function is by automatically running a search of all data contained in NDIS on a weekly basis, in order to identify potential matches among and between forensic unknown data newly-entered into the system from crime scenes, and offender data already contained in the system.  *Id.*

9.      As required by the DNA Identification Act, in order to ensure the quality and accuracy of the data contained in NDIS, all forensic labs that participate in NDIS must, first, meet or exceed certain Quality Assurance Standards developed and recommended to the FBI Director by a DNA Advisory Board, pursuant to 42 U.S.C. § 14131; and, second, be accredited by one of two private, independent accrediting bodies in the United States.  *Id.* ¶¶ 18-21.  Only DNA profiles developed by accredited labs and uploaded through appropriate participating federal, state, and local law enforcement agencies are searched in the course of these routine weekly searches performed by CODIS. *Id.* ¶ 7

10.      Beginning in January 2003, the FBI recognized the occasional need to perform exceptional, expeditious searches of NDIS outside of the routinely scheduled weekly searches. These searches, which are performed manually at the request of the NDIS Custodian, are known as "Manual Keyboard Searches."  Hares Decl. ¶ 16.  These Manual Keyboard Searches are

performed in two instances of compelling law enforcement necessity, either (1) where there is an urgent need to search the DNA profile of a violent criminal who, it is believed, may commit another crime before the routine automatic search is conducted; or (2) where a DNA profile from a crime scene is not sufficiently detailed to qualify for being uploaded to the NDIS system but the NDIS Custodian, at his discretion, determines that it is appropriate to search manually for potential matches to the incomplete profile. *Id.*

11.     In order to provide guidance to the federal, state, and local laboratory employees who serve as CODIS administrators, an NDIS Procedures Board (consisting of representatives of the state, federal, and local law enforcement agencies that are authorized to participate in CODIS) created a policy manual called the NDIS Manual Keyboard Searches by NDIS Custodian, Operational Procedures ("Operational Procedures").  *Id.* ¶¶ 16 - 17; A.R. 30-40. These Operational Procedures specify that a Manual Keyboard Search can be run only when (1) a CODIS State Administrator has certified that the DNA profile to be searched meets all the requirements of the DNA Identification Act; and (2) the profile to be searched meets the requirements of the DNA Identification Act, including that the profile was developed by an accredited lab which meets or exceeds the Quality Assurance Standards developed pursuant to 42 U.S.C. § 14131.  *Id.* ¶ 14.

12.     When a Manual Keyboard Search is run in NDIS, any potential match found by the search does not immediately yield the identity of the individual whose DNA profile was found to be a match.  Indeed, NDIS does not contain names, case-related information, or other personally-identifying information about the persons from whom DNA samples are collected. Hares Decl. ¶ 30(a).  *See* 61 Fed. Reg.  37495 (July 18, 2006) ("FBI Privacy Act Systems").

Only operational identifiers such as Specimen Numbers, Criminal Justice Agency Identifiers, and DNA Personnel identifiers are contained with the corresponding DNA data in NDIS. *Id.* NDIS does not release such identifiers to any party other than the holder of the identifiers, *i.e.*, the agency which submitted the profile for inclusion in NDIS. *Id.*

13.     NDIS searches only return potential candidate matches. Hares Decl. ¶ 30(b). NDIS' role in the event of a potential match is to notify both submitting agencies of the potential match; it is then the responsibility of the agencies to go through confirmation procedures to determine whether there is a match in fact. *Id.* Each state has its own confirmation procedures.

14.     In the event that the DNA data which was the subject of plaintiff's request were searched against NDIS and a potential match identified, the result would be in the form of operational identifiers for the potential match, and NDIS would notify the originating agency. *Id.*, ¶ 30(c). Whether the state could or would honor that request would be a matter of individual state law, and a matter over which the FBI Laboratory would have no control.

<div style="margin-left: 50%;">

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

PATRICK J. FITZGERALD
United States Attorney

THOMAS P. WALSH
Assistant United States Attorney
Chief, Civil Division
219 Dearborn Street
Chicago, Illinois
(312) 353-5300

</div>

 

 

<u>/s   *Elisabeth Layton*</u>
ARTHUR R. GOLDBERG (D.C. Bar 180661)
Assistant Director
ELISABETH LAYTON (D.C. Bar 462227)
Civil Division, Federal Programs Branch
U.S. Department of Justice,
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Telephone: (202) 514-3183
Fax: (202) 616-8470
Elisabeth.Layton@usdoj.gov

Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, in accordance with Fed. R. Civ. P. 5, LR 5.5, and this Court's General Order on Electronic Case Filing, the foregoing **DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE** was served pursuant to the district court's ECF system as to ECF filers.

/s     *Elisabeth Layton*
Elisabeth Layton
Trial Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Avenue, NW
Washington, DC 20044
(202) 514-3183